# STATE OF MICHIGAN

# COURT OF APPEALS

In re LATHAM, Minors.

UNPUBLISHED
March 27, 2018

No. 339250
Livingston Circuit Court
Family Division
LC No. 15-015054-NA

In re LATHAM, Minor.

No. 339257
Livingston Circuit Court
Family Division
LC No. 12-014303-NA

Before: STEPHENS, P.J., and SHAPIRO and RONAYNE KRAUSE, JJ.

PER CURIAM.

In these consolidated cases, respondent-father appeals the orders terminating his parental rights to the minor children, SL, PL, and GL,[1] under MCL 712A.19b(3)(c)(*i*) (conditions of the adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (likelihood of harm). For the reasons set forth below, we affirm.

Respondent is the biological father to SL and PL. The parental rights of these children's respective mothers, who were also respondents in the proceedings below, were separately terminated. Respondent has a long history of drug use, including guilty pleas for the use of cocaine and heroin. Additionally, both children's mothers testified to incidents of domestic violence. Petitioner's involvement in this matter began in July 2015, when SL found PL's mother, respondent's wife, unconscious as a result of a heroin overdose. Petitioner removed the children from their parents' care, placed SL and GL in foster care, and placed PL with a relative.

---

[1] Respondent is the legal father of GL because GL was born to respondent's wife, but the wife testified that respondent was not the biological father of GL and expressed uncertainty over who the father might be. Respondent has waived any argument with respect to GL, and thus this appeal concerns his rights to PL and SL only.

-1-

Respondent's parent agency treatment plan required him to participate in parenting classes, along with substance abuse and domestic violence services, and to obtain stable employment and housing. There is no dispute that in the months after the filing of the petition, respondent failed to participate in services. Respondent admitted that in September 2015, he attended an appointment at Key Development, a substance-abuse treatment agency, and that he arrived late and left early. Respondent further admitted that he was using heroin at the time, and that he altered or otherwise attempted to mask his samples for drug screens.

Respondent was arrested for a violation of his probation in October 2015, but was released to an inpatient rehabilitation facility, where he was expected to remain for 90 days. Less than two hours after his arrival at the rehabilitation facility, respondent left the facility and spent approximately $2,000 on drugs. Respondent's caseworker testified that respondent was to complete the Domestic Assailant Intervention Program (DAIP), but he did not complete the intake appointment and failed to complete the program. Further, respondent did not complete a psychological assessment, and failed to complete a parenting program in the fall of 2015. Respondent was arrested in November 2015 for possession of heroin and cocaine, and he pled guilty to two counts of felony possession. Approximately one month before respondent's release from prison, petitioner requested termination of respondent's parental rights.

During the termination hearing, respondent's case worker testified that he communicated with respondent during his incarceration, once a month by letter and once in person. He stated that respondent was referred to services and he began participating in substance abuse, emotional stability, and employment services. Respondent also testified to various services he participated in during his incarceration. However, despite respondent's involvement in various services during his incarceration, the caseworker expressed concerns that "we have not seen any length of time where [respondent] has been . . . outside of incarceration . . . and maintain[ed] sobriety." Respondent's wife testified that respondent relapsed while in prison, and that he had asked her to smuggle Suboxone into the facility. The caseworker expressed this indicated that the substance-abuse services had not resulted in a "change in the mind set and . . . building the coping skills needed . . . to live as an addict," and opined that it would take respondent "approximately a year" to reach stability. The caseworker was also concerned that, even if respondent were drug free, he might "turn to anger . . . or aggression," and added, "I'm concerned that even if he's engaged in services right now . . . that he's going to have a high likelihood of . . . relapsing and . . . continued use."

During the proceedings on the first day of the termination hearing, which occurred approximately two weeks after respondent's release from prison, respondent stated that he had begun working for an asphalt company. During the proceedings on the third and final day of the hearing, six weeks since his release from prison, respondent reported that he had worked for the asphalt company, and for a restaurant's catering business, for a total of four days.

Testimony at the termination hearing also revealed that after his release from prison, respondent began living with a family friend, whom he regarded as a father figure, in a home described as "a little bit outdated" and in need of cleaning before the children could join him there because of "dust" and "an overabundance of food." There was also testimony that the family friend was an alcoholic and a hoarder.

Following the termination hearing, the trial court found that there was clear and convincing evidence to terminate respondent's parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), and that termination was in the children's best interests.

On appeal, respondent first argues that petitioner failed to make reasonable efforts to reunify the family because his parental rights were terminated on the basis of his incarceration. We disagree.[2]

Under the Probate Code, MCL 710.21 *et seq*., petitioner "has an affirmative duty to make reasonable efforts to reunify a family before seeking termination of parental rights." *In re Hicks/Brown*, ___ Mich ___, ___; 893 NW2d 637 (2017) (Docket No. 153786); slip op at 4 (citations omitted). Those reasonable efforts must include petitioner's creation of a service plan that states the steps that it, along with the parent, will take to resolve "the issues that led to court involvement and to achieve reunification." *Id*. at ___; slip op at 4. Before a child who has come within the jurisdiction of the family court will be returned to a parent, that parent must show that he or she can meet their child's basic needs. *In re Terry*, 240 Mich App 14, 28; 610 NW2d 563 (2000). "If a parent cannot or will not meet her irreducible minimum parental responsibilities, the needs of the child must prevail over the needs of the parent." *Id*. Although petitioner has "a responsibility to expend reasonable efforts to provide services to secure reunification," a respondent must participate in, and benefit from, services that are offered. *In re Frey*, 297 Mich App 242, 248; 824 NW2d 569 (2012).

The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(*i*), (g), and (j), which permit termination under the following circumstances:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial disposition order, and the court, by clear and convincing evidence, finds either of the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

\* \* \*

---

[2] This Court reviews a circuit court's decision to terminate parental rights under the clear error standard. *In re Williams*, 286 Mich App 253, 271; 779 NW2d 286 (2009). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). Under that standard, the lower court's decision must be "more than just maybe or probably wrong." *In re Trejo Minors*, 462 Mich 341, 356; 612 NW2d 407 (2000) (quotation marks and citations omitted).

(g) The parent, without regard to intent, fails to provide proper care or custody for the child and there is no reasonable expectation that the parent will be able to provide proper care and custody within a reasonable time considering the child's age.

\* \* \*

(j) There is a reasonable likelihood, based on the conduct or capacity of the child's parent, that the child will be harmed if he or she is returned to the home of the parent.

Respondent cites *In re Mason*, 486 Mich 142, 156; 782 NW2d 747 (2010) in support of his argument. However, we conclude that respondent's argument lacks merit.

In *Mason*, the respondent was "jailed for drunk driving," the removal petition was filed while the respondent was incarcerated, and the respondent participated in a hearing over the telephone, but respondent was not informed of five subsequent hearings. *Id*. at 147-148. More than 16 months after his initial participation, the respondent informed the trial court of his completion of various classes, as well as attendance at Alcoholics Anonymous meetings, and that he was on waiting lists for parenting classes and counseling. *Id*. at 148-149. The petition had set forth only that respondent was incarcerated and noted that he had been participating in "12-step meetings," a "Business Education Technology Program," and that he was on a waiting list for parenting classes. *Id*. at 149. Our Supreme Court, citing MCL 712A.19a(2), stated that the state must put forth "[r]easonable efforts to reunify the child and family" and that "[t]he state is not relieved of its duties to engage an absent parent merely because that parent is incarcerated." *Id*. at 152. The Court explained that a respondent in parental rights termination proceedings has a "statutory right to be provided services." *Id*. at 159. According to the Court, "The mere present inability to personally care for one's children as a result of incarceration does not constitute grounds for termination." *Id*. at 160.

In this case, however, respondent was provided with services and fully participated in the proceedings. In the period between adjudication and respondent's incarceration, respondent was referred to drug screens, the DAIP, a psychological assessment, and a parenting program, but failed to complete any of the drug screens or intake appointments. Respondent thus had an opportunity to participate in services before his incarceration but failed to do so, unlike the respondent in *Mason*, who was incarcerated at the time the petition was filed. 486 Mich at 147.

Moreover, respondent's primary caseworker communicated with respondent once a month by letter, met respondent once in person, and communicated with the prison regarding the services that were available to respondent. Although a psychological assessment was not conducted while respondent was in prison, his caseworker testified that it was not possible for respondent to receive such an assessment while in prison. Nevertheless, respondent participated in several services while incarcerated. Given that respondent had the opportunity before becoming incarcerated to engage in services but choose not to do so, and in fact, participated in a variety of programs while incarcerated, we conclude that respondent was not deprived of his "statutory right to be provided services." *Mason*, 486 Mich at 159.

-4-

Additionally, in contrast to the respondent in *Mason*, who was not included in hearings for a 16-month period, respondent appeared in person at two of the hearings, and by video at seven hearings during his incarceration.

Respondent argues generally that he should have been given more time to benefit from services. However, "the Legislature did not intend that children be left indefinitely in foster care, but rather that parental rights be terminated if the conditions leading to the proceedings could not be rectified within a reasonable time." *In re Dahms*, 187 Mich App 644, 647; 468 NW2d 315 (1991). We conclude that respondent had adequate time to participate in, and benefit from, services to allow the trial court a reasonable basis for assessing his prospects for overcoming reunification barriers.

Moreover, petitioner presented clear and convincing evidence beyond respondent's incarceration to establish each of the three statutory grounds for termination. See *In re JK*, 468 Mich 202, 210; 661 NW2d 216 (2003) ("The petitioner bears the burden of establishing the existence of at least one of [the statutory grounds for termination of parental rights] by clear and convincing evidence.").

The trial court properly terminated respondent's parental rights under MCL 712A.19b(3)(c)(*i*). The records reveal that more than 182 days have passed since the issuance of the initial disposition order and when the trial court found that statutory grounds existed to terminate respondent's parental rights. Additionally, the conditions that led to adjudication were substance abuse, emotional stability, parenting skills, employment, and housing.

As noted, before going to prison respondent had failed to participate services. Although there was evidence that respondent participated in services while in prison, there was evidence that he did not benefit from the services. While respondent's negative drug screen tests since his release from prison indicate some benefits to respondent from the substance-abuse services provided; however, the referee's doubts about respondent's credibility militated against taking respondent's own assertions of reform in this regard at face value. See *Thames v Thames*, 191 Mich App 299, 311; 477 NW2d 496 (1991) ("Credibility is a matter for the trier of fact to ascertain. This Court will not resolve it anew."). Also, respondent's resolve about his substance abuse reform was called into doubt by his description of his relapse-prevention plan as "when things get crazy in my life that I call someone and tell them so I'm held accountable for actions," and respondent's wife's testimony that respondent had asked her to smuggle Suboxone into prison for him. The primary caseworker expressed concerns that respondent had not demonstrated sobriety outside of prison for "any length of time," and that respondent's apparent endeavor to obtain drugs while incarcerated indicated that the substance-abuse services had not resulted in a "change in the mind set and . . . building the coping skills needed . . . to live as an addict." Also of concern is that respondent planned to live with his friend whom other witnesses described as an alcoholic and a hoarder. For these reasons, we conclude that the record supports the trial court's conclusion that respondent did not benefit from his substance-abuse services.

Further, respondent's testimony that he had only worked for four days and for two different employees since his release from prison supports the trial court's conclusion that respondent's employment situation was unstable. This record, considered along with respondent's poor record of participating in, and benefitting from, services, does not indicate that

the trial court was "more than just maybe or probably wrong," *In re Trejo*, 462 Mich at 356, in concluding that petitioner had proved by clear and convincing evidence that termination was warranted under MCL 712A.19b(3)(c)(*i*).

Termination of respondent's parental rights was also proper under MCL 712A.19b(3)(j). Respondent's argument that this Court should reverse the termination of his parental rights pursuant to *In re Pops*, 315 Mich App 590; 890 NW2d 902 (2016), is without merit as *Pops* is factually distinguishable. In that case, the trial court obtained jurisdiction over the minor, EP, upon the petitioner's allegation that the respondent fled from police with EP in the vehicle. *Id*. at 592. The respondent pled guilty to resisting and obstructing a police officer, and was sentenced to serve a term of probation. *Id*. at 593. While on probation, the respondent participated in services, but was subsequently imprisoned for carrying a concealed weapon. *Id*. The trial court there found that the petitioner had established grounds for termination under MCL 712A.19b(3)(j), (c)(*i*), and (g). *Id*. at 593-594.

We reversed, noting that "[t]he trial court terminated parental rights . . . solely because respondent was incarcerated, and [because it concluded that the child] would 'obviously' be harmed if returned to respondent." *Id*. at 600. We held that a criminal record alone is not sufficient to terminate parental rights and that the trial court's conclusion that reunification would result in harm was clear error where the petitioner "did not present any evidence that respondent ever harmed his child or was likely to harm his child." *Id*. By contrast, in this case, there was evidence that petitioner was violent towards his wife, had struck her as well as SL, and that the children had witnessed domestic violence. There was also testimony that respondent used heroine while the children were present. Moreover, respondent's friend's house did not offer a safe environment for the children.

Similarly, we reject respondent's argument that we should consider the rationale in *In re JK*, which he asserts "seems to say assessments are important in child protection cases." Respondent contends that the Court *In re Jk*, "clearly [stated that] if the service provider doesn't have the right qualifications then DHS must find one who does. When such things do not occur, the evidence is not sufficient to warrant termination." Respondent's argument is unclear as it does not identify any of the service providers in this case that does not have the right qualifications. Moreover, the Court *In re JK* did not discuss the importance of assessments generally; rather it addressed whether a particular assessment provided clear and convincing evidence to support termination of parental rights where the therapist that provided the bonding assessment observed the respondent and the child "for just one hour." *In re Jk*, 468 Mich at 213.

Given that petitioner was required to establish only one ground for termination, we need not address respondent's argument under MCL 712A.19b(3)(g).

Respondent also argues that the trial court erred in concluding that termination of his parental rights was in the best interests of SL and PL. We disagree.[3]

In determining a child's best interests, the trial court may consider the child's need for stability and permanency and whether the child is progressing in its current placement. *In re VanDalen*, 293 Mich App 120, 141; 809 NW2d 412 (2011). In addition, the trial court may consider the children's bond to the parent, the parent's parenting ability, and the advantages of a foster home over the parent's home. *In re Olive/Metts*, 297 Mich App 35, 41-42; 823 NW2d 144 (2012). "[T]he preponderance of the evidence standard applies to the best-interest determination." *In re Moss*, 301 Mich App 76, 83; 836 NW2d 182 (2013).

The best interests of the children supported termination of respondent's parental rights. First, there was no evidence that respondent was bonded to the children. Respondent testified that he had phone contact with PL about a month before the termination hearing, and that "[s]he would say hi dad I love you and miss you." However, respondent testified that his bond with SL was not "doing very good." Further, although SL's mother testified that SL was attached to respondent, her opinion was based on one instance where she babysat SL in 2015. With respect to parenting ability, the primary caseworker testified that he had concerns related to respondent's "temperament" and ability to meet the "basic needs" of the children. Respondent's wife testified that respondent was "a great dad off drugs and alcohol," but that "on drugs and alcohol very violent father."

Further, at the time of the termination decision, SL was six years old and PL was four years old. Both had been in foster care for nearly two years. The caseworker testified that PL's "greatest need" was a safe, stable, and permanent home. That the children had spent such a large portion of their lives in foster care called attention to their need for permanency. According to the primary caseworker, PL's current placement provided her with basic needs and a "strong relationship" with her foster parents, who were willing to provide a home for her. He further testified that SL's current placement had done "a lot of good work" in connection with her "adjustment disorder" and other emotional and developmental concerns. The other caseworker reported that the foster families provided the children with love and affection, and covered their basic needs. In contrast, respondent wished to bring the children to the home of his friend, who, as the evidence indicated, was an alcoholic and a hoarder. Therefore, the comparison of respondent's proposed home to that of the current foster care placements weighed in favor of termination.

---

[3] A circuit court's decision regarding a child's best interests is also reviewed for clear error. MCR 3.977(K); *In re Trejo*, 462 Mich at 356-357. " 'A finding is "clearly erroneous" [if] although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been made.' " *In re Rood*, 483 Mich 73, 91; 763 NW2d 587 (2009) (citation omitted).

There was clear and convincing evidence that it was in the minor children's bests interests to terminate respondent's parental rights.

Affirmed.

/s/ Cynthia Diane Stephens
/s/ Douglas B. Shapiro
/s/ Amy Ronayne Krause